IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00638-RJC-WCM

| | | |
|---|---|---|
| MICHAEL LEE GREENE, | ) | |
| | ) | MEMORANDUM AND |
| Plaintiff, | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| TOWN OF LILESVILLE, NC; and | ) | |
| KEVIN R. MULLIS | ) | |
| *in his Individually Capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a Motion for Judgment on the

Pleadings (Doc. 122) filed by the Town of Lilesville, North Carolina (the

"Town"), which has been referred to the undersigned pursuant to 28 U.S.C. §

636 for the entry of a recommendation.

## I.    Relevant Background

### A. The Federal Criminal Case

On February 19, 2009, a sealed Bill of Indictment was filed against

Michael Lee Greene ("Greene") in Criminal Case No. 3:09-cr-39-FDW-5 (the

"Federal Criminal Case," Doc. 3).

A Superseding Bill of Indictment was filed on April 22, 2009 charging

Greene with various crimes, including conspiracy to distribute cocaine and

1

crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and conspiracy to commit robbery in violation of 18 U.S.C. § 1951. Doc. 114.

A jury trial was conducted in February of 2010, following which Greene was convicted on both conspiracy charges. Federal Criminal Case, Doc. 343. During the trial, Kevin Mullis ("Mullis"), who was at the time the Chief of Police for the Town, testified regarding evidence seized from Greene's vehicle during a May 25, 2007 traffic stop (the "2007 Traffic Stop"). After the trial, Mullis retained custody of drug and non-drug[1] exhibits related to the 2007 Traffic Stop ("Exhibits 28A and 28B").

Greene was sentenced on March 7, 2011; he filed a Notice of Appeal on March 22, 2011. Federal Criminal Case, Doc. 559.

On March 24, 2011, Greene filed a Motion to Vacate under 28 U.S.C. § 2255, which was denied as premature in light of his appeal. Federal Criminal Case, Doc. 598; Civil Case No. 3:11-cv-00143-GCM, Doc. 3.

In late April of 2012, the North Carolina State Bureau of Investigation ("SBI") advised the United States Attorney's Office that the SBI had opened an investigation into Mullis with respect to missing evidence. See Federal Criminal Case, Doc. 712 at 5.

---

[1] The "non-drug" evidence consisted of "flex" seized from the vehicle. "Flex" was described as being material intended to look like cocaine.

On June 5, 2012, Greene's defense counsel was informed of an embezzlement investigation regarding Mullis, as well as the missing Exhibits.[2] See Federal Criminal Case, Doc. 712.

On June 21, 2012, Greene filed a Motion for New Trial based on Mullis' alleged misconduct in connection with the Federal Criminal Case, including the disappearance of Exhibits 28A and 28B. Federal Criminal Case, Doc. 642.

On January 2, 2013, Greene filed an "Official Letter Request" asking for a "federal inquiry and/or investigation into the alleged improprieties of Police Chief Kevin Mullis and his part in planting inculpatory evidence and stealing or destroying that same evidence." Federal Criminal Case, Doc. 689. In his letter, Greene asserted that "throughout my trial in February of 2010, I complained numerous times that I never possessed any drugs at that traffic stop on May 25, 2007 in Lilesville, North Carolina, yet that very drug evidence I adamantly complained was never in my possession was used to help convict me." Id. at 1; see also id. at 2 (asserting that Mullis "manufactured and planted this evidence on me").

In an unpublished opinion filed on March 7, 2013, the United States Court of Appeals for the Fourth Circuit concluded that "there was substantial

---

[2] Greene alleges, upon information and belief, that Mullis was indicted in Anson County on charges of felonious larceny on March 4, 2013, and that on May 19, 2014, Mullis was convicted by plea of the lesser included misdemeanor of larceny and was sentenced to probation. Doc. 37 at ¶ 13.

3

evidence" to support Greene's convictions in the Federal Criminal Case, and explained as follows:

> The evidence in support of the convictions came from law enforcement and several of Greene's co-conspirators. In addition, there was evidence of wiretaps, weapons seizures, DNA and drug analysis that offered clear support for the guilty verdicts. There was more than sufficient evidence showing that Greene voluntarily agreed to engage in a conspiracy to distribute drugs and to commit a robbery.

> Federal Criminal Case, Doc. 699.

The Fourth Circuit did, however, remand the case for resentencing. Id.

On March 22, 2013, the Government learned that Mullis had been part of an investigation into the 2000 murder of Jennifer Howell by Mullis' brother E. Scott Mullis. Federal Criminal Case, Doc. 712 at 8 (stating that Mullis admitted that he burned the clothes worn by his brother during the murder, but later agreed to cooperate with police to recover the burned clothes and record incriminating conversations).

On October 7, 2013, the Hon. Frank D. Whitney, the district judge presiding over the Federal Criminal Case, conducted Greene's resentencing hearing, and sentenced Greene to a total of 720 months. Federal Criminal Case, Doc. 734. On that same date, Judge Whitney also considered and denied Greene's Motion for New Trial and request for a federal inquiry. See Federal Criminal Case, Doc. 732 (Transcript of October 7, 2013 hearing, finding that

the exclusion of Mullis' testimony and the evidence from the 2007 Traffic Stop would have had "no impact on the jury" in light of the overwhelming evidence of Greene's guilt). The Court also stated that there was no evidence to support Greene's assertion that evidence from the 2007 Traffic Stop had been "planted." See Doc. 838 at 13 (citing Doc. 732 at 41-43).

On September 9, 2015, Greene filed a second Motion to Vacate pursuant to 28 U.S.C. § 2255. Federal Criminal Case, Doc. 810 ("Second Motion to Vacate"); Civil Case No. 3:15-cv-00420-FDW, Doc. 1. Therein, Greene asserted that his trial counsel had "failed to investigate" Mullis, who Greene characterized as "one of the prosecution key witness [sic]." Id. at 6. Greene further asserted that "Mr. Mullis aided and abetted in an [sic] murder with his brother Scott Mullis, in which he agreed to cooperate and wore a transmitting device recording incriminating conversations with his brother." Id. Additionally, Greene asserted that Mullis had deliberately destroyed or lost certain drug evidence. Id. at 7-8; see also id. at 15, 18.

In an Order filed on January 12, 2017, Judge Whitney denied the Second Motion to Vacate, see Federal Criminal Case, Doc. 838; Civil Case No. 3:15-cv-00420-FDW, Doc. 27 (the "January 12 Order"), and in doing so, addressed the 2007 Traffic Stop and Greene's arguments regarding Mullis' alleged misconduct. Id. at 25-34.

### B. The State Criminal Case

On July 23, 2007, Greene was indicted in state court for felony possession of cocaine in relation to the 2007 Traffic Stop. <u>See</u> Civil Case No. 3:17-cv-00638, Doc. 123-2, <u>State v. Green[e]</u>, No. 07crs050958, Superior Court Division of Anson County, State of North Carolina (the "State Criminal Case").

On March 24, 2008, Greene pled guilty to one count of misdemeanor possession of drug paraphernalia,[3] and was sentenced to 32 days in custody. <u>See</u> Federal Criminal Case, Doc. 516 at ¶ 116; Civil Case No. 3:17-cv-00638, Doc. 37 at ¶ 8 & 37-1.

In 2015, Greene filed a "Motion for Appropriate Relief" in the State Criminal Case. <u>See</u> Civil Case No. 3:17-cv-00638, Doc. 37-1 at 3-6. Therein, Greene argued that his state conviction should be vacated because Mullis purportedly planted evidence against Greene during the 2007 Traffic Stop, and that the state prosecutor should have known of Mullis' involvement with his brother's murder case. <u>See</u> No. 3:09-cr-00039, Doc. 838 at 33.

In response to that Motion, the State advised that Mullis no longer worked for the Lilesville Police Department, that if the court granted Greene a new trial the State did not intend to call Mullis to testify, and that it did not

---

[3] His plea agreement in the State Criminal Case stated that: "The Defendant shall plead guilty to one count of possession of drug paraphernalia instead of one count felony possession cocaine." No. 3:17-cv-000638, Doc. 123-3 at 6.

believe Greene could "be brought in by a writ or any state allowed process as he [was] serving a sentence in Federal Prison…." No. 3:17-cv-00638, Doc. 37-1 at 8.

On June 17, 2016, Greene's Motion for Appropriate Relief was granted, and the 2008 state court judgment was vacated. Id. at 12.

### C. The First Federal Civil Action

On February 7, 2011, Greene filed a civil action against various defendants, including the Lilesville Police Department and Mullis, asserting claims arising out of the 2007 Traffic Stop. Civil No. 3:11cv69–GCM (the "First § 1983 Suit"). In his Complaint, Greene alleged that Mullis knowingly relied on false information to obtain a warrant for Greene's arrest. First § 1983 Suit, Doc. 1 at 4.

On September 3, 2011, the Hon. Graham C. Mullen, the district judge who presided over the First § 1983 Suit, dismissed Greene's Complaint. First § 1983 Suit, Doc. 7. With respect to Greene's claims against Mullis, Judge Mullen explained:

> Plaintiff's claim can be read in one of two ways. The first is that he was arrested without a warrant and without probable cause incident to a traffic stop on May 25, 2007. The second is that an unconstitutional seizure occurred when he was held pursuant to a warrant Defendant Mullis obtained by providing false information to a magistrate.
>
> Id. at 6.

7

However, Judge Mullen reasoned that under either reading, Greene's claims were time-barred. Id. at 7-8 (stating that to the extent Plaintiff alleged that there was a warrantless arrest, "Plaintiff had until May 25, 2010 to file this action" and that to the extent Plaintiff alleged that there was an arrest pursuant to a warrant not supported by probable cause, "Plaintiff had until June 27, 2010 to file this action").

### D. The Instant Matter

On October 27, 2017, Greene filed his original Complaint in this case. No. 3:17-cv-00638, Doc. 1. Greene filed an Amended Complaint on December 12, 2017, and a Second Amended Complaint on May 8, 2018. Docs. 6, 37.

In the Second Amended Complaint, Greene asserts that the instant matter is "solely based on the actions and inactions of the defendants as they relate to [his] the now-vacated state court conviction…." Doc. 37 at 3.

The Second Amended Complaint asserts the following claims:

1. Unlawful prosecution of state criminal case in violation of 42 U.S.C. § 1983;

2. False arrest in violation of North Carolina state law;

3. False arrest in violation of 42 U.S.C. § 1983;

4. False imprisonment in violation of North Carolina state law;

5. False imprisonment in violation of 42 U.S.C. § 1983;

6. Abuse of process in violation of North Carolina state law;

8

7. Negligent hiring, retention and promotion, failure to supervise and train in violation of 42 U.S.C. § 198342 U.S.C. § 1983 and pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978);

8. Malicious prosecution in violation of North Carolina state law; and

9. Malicious prosecution in violation of 42 U.S.C. § 1983.

Doc. 37 at ¶¶ 34-53.

On May 16, 2018, Mullis, in his individual capacity and proceeding *pro se*, filed a Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. 38.

On May 22, 2018, Mullis, in his official capacity, and the Town filed a separate Motion to Dismiss. Doc. 39.

On March 21, 2019, the Court granted both Motions. Doc. 63. Specifically, the Court dismissed the claims against Mullis in his official capacity as duplicative of the claims against the Town, dismissed claims 1-5 and 8-9 against the remaining defendants as barred by res judicata (due to the First § 1983 Suit), and dismissed claims 6-7 against the remaining defendants as time-barred. Doc. 63. Greene appealed.

In an unpublished decision issued on November 17, 2020, the Fourth Circuit affirmed the dismissal of Greene's claims against Mullis in Mullis' official capacity, Greene's claims for false arrest and false imprisonment, malicious and unlawful prosecution "relating to the state charges dismissed before he filed his first § 1983 suit in February 2011," and his *Monell* claim to

9

the extent it was "predicated on his claims of false arrest and false imprisonment." Doc. 69 at 2-3.

The Fourth Circuit found, however, that to the extent Greene's claims for malicious and unlawful prosecution related to Greene's "conviction for possession of drug paraphernalia," they were not barred by res judicata because Greene's state court conviction was vacated in 2016, "after Greene's first § 1983 suit." Id. at 3. Additionally, the court held that Greene's Monell claim against the Town "relating to the conviction for possession of drug paraphernalia did not accrue until the state court vacated that conviction in 2016" and was therefore timely. Id. at 4.[4]

On February 28, 2023, the Town filed the instant Motion for Judgment on the Pleadings. Docs. 122, 123.[5] Greene has responded, and the Town has replied. Docs. 133, 136.

## II. Legal Standard

"A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." _Drager v. PLIVA USA, Inc.,_ 741 F.3d 470, 474 (4th Cir. 2014).

---

[4] The Fourth Circuit also noted that Greene's claim of unlawful prosecution in violation of § 1983 was duplicative of his § 1983 malicious prosecution claim. Doc. 69 at 3 n. 3.

[5] Although Mullis, in his individual capacity, remains a defendant in this matter, he has not joined in the Town's Motion for Judgment on the Pleadings.

Courts apply "the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)," Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998)), except that, for a Rule 12(c) motion, courts consider the answer in addition to the complaint. A. S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) ("On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered, and thus the District Court, in considering only the complaint and answer . . . properly observed the scope of the motion before it.").

In that regard, courts "are required to accept all well-pleaded allegations of [the] complaint as true and draw all reasonable factual inferences in [the plaintiff's] favor." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)). The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (finding the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor does a court accept as true "unwarranted inferences,

unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

## III. Discussion

### A. Materials Considered

The pleadings, trial transcripts, and court orders filed in the Federal Criminal Case, the State Criminal Case, and the First § 1983 Suit have been considered in connection with the instant Motion. See Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396 (4th Cir. 2006); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Greene v. Mullis, 829 Fed. Appx. 604 (Mem) (4th Cir. 2020) (unpubl.) ("We may also consider authentic, relevant documents attached to the complaint and the motion to dismiss, and take judicial notice of matters of public record, including court orders and filings in Greene's prior cases"); Parker v. Homestead Studio Suites Hotel, No. 5:05–cv–69–BR, 2005 WL 3968291, at *1 (E.D.N.C. May 13, 2005) ("the district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment"); see also Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006) ("We must accept the allegations in the complaint . .. unless they ... contradict matters properly subject to judicial notice or by exhibit").

12

## B. Malicious Prosecution

A claim arising out of allegations that a plaintiff was maliciously prosecuted, whether brought pursuant to Section 1983 for a violation of the Fourth Amendment or as a state law tort claim, requires "that [1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014) (internal citations omitted); Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000) ("What we termed a 'malicious prosecution' claim in [Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996)] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution"); Williams v. Kuppenheimer Mfg. Co., 105 N.C.App. 198, 200 (1992) ("In order to recover in an action for malicious prosecution [under state law], plaintiff must establish that defendant: (1) instituted, procured or participated in the criminal proceeding against plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of plaintiff").

Here, the Town acknowledges that "under federal law, Plaintiff can demonstrate a favorable termination by virtue of the grant of the motion for appropriate relief and the resulting vacation of his guilty plea." Doc. 123 at 9.

The Town asserts, however, that Greene cannot establish that the State Criminal Case was initiated or maintained without probable cause.

"It is well-settled that an indictment, fair on its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." Lancaster v. Woodward, No. 17-1205, 2018 WL 1064253, at *4 (D.S.C. Feb. 26, 2018) (internal quotations omitted) (citing Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012), quoting Gerstein v. Pugh, 420 U.S. 103, 117, n. 19 (1975)); see also Whitlock v. Chaffin, No. 3:11cv352-MOC, 2012 WL 2681945 at *6 (W.D.N.C. July 6, 2012) (a "plaintiff may show that the conviction was 'procured by fraud or other unfair means' in order to preclude the finding of probable cause") (citation omitted).

On July 23, 2007, Greene was indicted in state court for felony possession of cocaine. See Civil Case No. 3:17-cv-00638, Doc. 123-2.

Nonetheless, Greene has alleged that Mullis "unlawfully planted" cocaine in Greene's vehicle during the 2007 Traffic Stop. See Doc. 37 at ¶ 6; ¶ 26.

The facts and circumstances of the 2007 Traffic Stop, though, were considered by the Court in the Federal Criminal Case. As explained by Judge Whitney:

> North Carolina state trooper Mark Stewart testified that on May 25, 2007, he stopped [Greene] for speeding on U.S. 74 east of Lilesville. Lilesville police chief

Kevin Mullis responded to Stewart's call for backup. When Mullis arrived, [Greene] was in the driver's seat of a white Ford Expedition. Jawaad Nash, Eric Sutton (who stated that his name was Derick Dion Mason), and Eugene Langley (also known as "Lang") were also in the car.

Two other law enforcement officers also came to the scene, and Anson County Sheriff's Deputy James Christopher Walker assisted Mullis in searching the vehicle. Walker showed Mullis an off-white rocky substance that was scattered around the front seat area. At trial, Mullis testified that it appeared to be crack cocaine that had been ground up. Mullis collected the evidence and marked it as item 1. When Mullis opened the trunk, [Greene] yelled, "Anything you find in there is mine." Mullis found a black duffel bag in the trunk containing clothes and a plastic baggie containing an off-white rocky substance that, along with a cutting tool, had been shoved inside a shoe. Mullis testified that he and Walker both thought the substance appeared to be crack cocaine. Mullis testified that the substance weighed 31 grams and that he marked it as item 3.

Mullis testified that he collected the evidence, placed it in a secure evidence storage at the Lilesville Police Department, and on May 30, 2007, he sent it to the North Carolina State Bureau of Investigation ("SBI") Laboratory for testing. Mullis also identified the box in which he sent the drugs for testing, noting that it had been resealed and returned to him by the lab.

Federal Criminal Case, Doc. 838 at 7-8 (footnote and internal citations to trial transcript omitted).

The Town argues that, based on the evidence presented during the Federal Criminal Case, there was probable cause to arrest Greene for, among other things, possession of cocaine. Doc. 123 at 14.

In response, Greene asserts that the Town's argument "is not on solid ground" because Mullis planted the drug evidence. Doc. 133 at 2. Greene further argues that the Town's reliance on the trial evidence from the Federal Criminal Case is misplaced, because following that trial, "a host of newly discovered/withheld evidence has come to light," including that Mullis had committed criminal acts in relation to the murder of Jennifer Howell and that Mullis "stole the planted evidence and evidence log…to prevent investigators from discovering exactly what he signed out of the evidence room in 2010 to present to Plaintiff's federal jury." Doc. 133 at 4.

Greene is correct that issues related to Exhibits 28A and 28B, as well as facts regarding Mullis' alleged embezzlement and involvement in Jennifer Howell's murder investigation came to light after the trial of the Federal Criminal Case. However, Greene has previously raised, and the Court has rejected, his arguments regarding the alleged planting of evidence during the 2007 Traffic Stop and the potential impact of that information on the jury in his federal trial. Specifically, Judge Whitney stated:

> contrary to Petitioner's assertion, the factual findings in the state court's order vacating Petitioner's conviction do not establish that Mullis planted evidence against Petitioner. The fact that the State chose to agree to dismiss the charges rather than attempt to re-try Petitioner for a misdemeanor conviction, for which he received a 32-day sentence, also does not establish that any evidence was planted, particularly where the evidence is missing, a primary

witness no longer works for the police department, and Petitioner is serving a long federal sentence out-of-state. In other words, the State's consent to granting the motion for appropriate relief does not indicate that the State believed or had any evidence to show that Mullis planted evidence. Moreover, there is independent evidence that the cocaine and flex were not planted in Petitioner's car while four law enforcement officers were on the scene. Jason Campbell testified that Sutton, who was in the car with Petitioner at the time of the traffic stop, told Campbell that Petitioner had some fake dope and had started to eat it when they got pulled over. Malik Billings also testified that after the stop he had to pick up Sutton, Nash, and Langley, and they told him that Petitioner had been pulled over for speeding and that the police had found flex in the car (not that police had planted flex in the car).

January 12 Order, Federal Criminal Case, Doc. 838 at 33-34 (internal citations omitted).[6]

Further, while Greene is correct that his state conviction was later vacated, Greene pled guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to misdemeanor possession of drug paraphernalia. Doc. 123-3 at 4. Although "[a]n *Alford* plea is 'an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest,'" U.S. v. King, 673 F.3d 274, 281 (4th Cir. 2012) (quoting United States v. Taylor, 659 F.3d 339, 347 (4th Cir.2011) (citing Alford, 400 U.S. at 37)), "[a] trial court may accept an *Alford* plea when: (1) the defendant 'intelligently concludes that his

---

[6] The January 12 Order additionally explained that Mullis's testimony regarding the 2007 Traffic Stop was corroborated by other witnesses. See id. at 8.

17

interests require entry of a guilty plea;' and (2) 'the record before the judge contains strong evidence of actual guilt.'" <u>King</u>, 673 F.3d at 281 (quoting <u>United States v. Mastrapa</u>, 509 F.3d 652, 659 (4th Cir. 2007) (quoting <u>Alford</u>, 400 U.S. at 37) (emphasis omitted)).

Under these circumstances, Greene has not sufficiently alleged that the State of North Carolina lacked probable cause to prosecute and convict Greene in the State Criminal Case.

### C. <u>Monell</u> Claim

The Supreme Court has stated that, under Section 1983, a local government "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). Rather, "[t]o hold a municipality liable for a constitutional violation under § 1983, a plaintiff must show that it was an official policy or custom of the municipality that caused the violation." <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004).

As noted above, the Fourth Circuit previously vacated the dismissal of Greene's <u>Monell</u> claim to the extent it was "predicated on his malicious and unlawful prosecution claims…." Doc. 69 at 4.

Because, as discussed above, Greene has not sufficiently alleged that the State of North Carolina lacked probable cause to prosecute and convict Greene

in the State Criminal Case, the undersigned will also recommend that Greene's Monell claim be dismissed. See Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability") (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, (1986)); Haughie v. Wexford Health Sources, Inc., 2020 WL 1158568, at *16 (D. Md. Mar. 9, 2020) ("[B]efore determining whether a plaintiff has established a claim for municipal liability under *Monell*, the court must first 'determine whether the complaint states a claim for a predicate constitutional violation'") (quoting Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003))).

## IV. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion for Judgment on the Pleadings (Doc. 122) filed by the Town of Lilesville, North Carolina be **GRANTED**.

In the event this recommendation is adopted, only Greene's claims against Mullis in his individual capacity will remain. As it appears that those claims would be subject to dismissal for the same reasons described above, the undersigned additionally **RECOMMENDS** that Greene be directed to show cause why his remaining claims against Mullis should not also be dismissed.

Signed: August 4, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).